RECEIVED
USDC, CLERK, CHARLESTON, S
2008 NOV 14 A 8 41

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Deborah Robinson, | ) | C. A. No. 2:08-0303-JFA-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Deborah Robinson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits on July 1, 2004, alleging that she became disabled on July 12, 2002, due to depression, torn right shoulder rotator cuff, problems with both hands, high blood pressure, gastro esophageal reflux disease, ulcers, and sinus problems. The application was denied initially and on reconsideration by the Social Security Administration. The plaintiff filed a request for a hearing on March 24, 2005. The administrative law judge

before whom the plaintiff appeared with counsel (Tr. 319-348, considered the case de novo, and on June 28, 2007, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. (Tr. 12-35). The administrative law judge's opinion became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on January 17, 2008.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since July 12, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.15.1571 et seq). . . .
>
> 3. The claimant has the following medically determinable combination of severe impairments: right shoulder impingement syndrome status post decompression surgery; repetitive motion tendonitis; obesity; and diabetes mellitus (20 CFR 404.1520(c)). . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity for light work. . . .
>
> 4. (sic) The claimant is unable to perform any past relevant work (20 CFR 404.1565). . . .
>
> 5. (sic) The claimant was born on April 20, 1958 and was 44 years old, which is defined as a

> younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> 6.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 7.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 8.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566). . . .
>
> 9.   The claimant has not been under a disability, as defined in the Social Security Act, from July 12, 2002 through the date of this decision (20 CFR 404.1520(g)).

Tr. 17-34.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation

reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial

evidence and proper legal standards have been applied.

## QUESTIONS PRESENTED

At oral argument before the undersigned on September 17, 2008, the plaintiff's counsel indicated that his strongest arguments[1] were that the administrative law judge committed reversible error by failing to properly consider the plaintiff's psychological impairments and by failing to obtain testimony from a vocational expert. It appears that the plaintiff is correct.

## DISCUSSION

A review of the record and relevant case law reveals that this matter should be reversed and remanded so that the administrative law judge can develop the record to include comprehensive psychological testing and evaluation of the plaintiff and for reevaluation of matter.

This case turns on the administrative law judge's rejection of Dr. Luther Diehl's evaluation of the plaintiff. In light of the evidence of record that conclusion is not supported by substantial evidence.

The plaintiff alleged that she was unable to perform substantial gainful activity because, among other reasons, her

---

[1] By brief the plaintiff presented the following questions: 1) did the administrative law judge commit reversible error by failing to properly consider the effects of Plaintiff's pain on her ability to work? 2) did the administrative law judge commit reversible error by failing to properly evaluate the plaintiff's credibility? 3) did the administrative law judge commit reversible error by failing to properly evaluate the plaintiff's residual functional capacity? 4) did the administrative law judge commit reversible error by failing to obtain testimony from a vocational expert?

depression caused by pain prevented working.  At stage 2 of the sequential evaluation process, the administrative law judge found that the plaintiff's mental impairments were non-severe. The administrative law judge continued the sequential evaluation process and found that, while the plaintiff in unable to perform her past relevant work, nonetheless the plaintiff had no severe non-exertional impairments so that reliance on the Medical-Vocational Guidelines (the grids) was appropriate to support his conclusion that the plaintiff was not disabled.

In so finding the administrative law judge gave no weight to the report of psychologist Luther A. Diehl, Ph.D., which report is the only evidence of record from a mental health professional regarding a mental impairment alleged by the plaintiff.  Dr. Diehl's evaluation dated February 5, 2007, included extensive testing including the Bender Motor Gestalt test, the Zung Depression Scale, the State Trait Anxiety Inventory, the Rorschach Inkblot Technique, the Wechsler Adult Intelligence Scale, third edition, and the Rey Memory Test.  Dr. Diehl reviewed plaintiff's medical records and conducted a clinical interview of the plaintiff.

Dr. Diehl diagnosed recurrent major depressive disorder moderate, chronic pain disorder associated with both psychological factors and a general medical condition, borderline intellectual functioning, and dependant and avoidant personality traits. T. 267-275.  Dr. Diehl assigned a Global Assessment of

Functioning (GAF) score of 50.[2]  Dr. Diehl also found that the plaintiff's mental impairments met the Listing of Impairments 12.04 for affective disorders and 12.07 for somatoform disorders.

Prior to Dr. Diehl's evaluation, a non-examining consultant, Lisa Verner, Ph.D., completed a Psychiatric Review Technique form and found that while the plaintiff reported that she suffered from depression on SSA form 3441 (T. 91), there were no records indicating that the plaintiff had been diagnosed with depression.  Based upon the lack of a record diagnosis of depression, Dr. Varner concluded that Plaintiff had no medically determinable mental impairment.  The administrative law judge relied on Dr. Varner's report to find that the plaintiff's depression was not medically determinable and therefore, nonsevere[3].

---

[2] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994). It excludes physical and environmental impairment. A GAF score of 50 indicates "Serious symptoms or any serious impairment in social, occupational, or school functioning. DSM IV at 32.

[3]  The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit an individual's ability to do basic work activities. See 20 C.F.R. § 416.921(a) (2007).  Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. § 416.921(b) (2007).  The Fourth Circuit held in Evans v. Heckler, that "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would

The administrative law judge performed a cursory two sentence evaluation of the B criteria of the Listings which Dr. Diehl found the plaintiff had met. The administrative law judge found mild limitations in social functioning, no limitations in activities of daily living, concentration, persistence or pace, and no extended periods of decompensation. The administrative law judge based these findings on "a review of all the evidence of record."

Here the administrative law judge erroneously exercised an expertise in the field of psychology he did not possess. See, e.g., Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984). He simply rejected Dr. Diehl's evaluation without any conflicting findings from a mental health professional and without noting that Dr. Diehl is the only psychologist who examined and tested the plaintiff. Also, the administrative law judge's attempt to discredit Dr. Diehl's conclusions because there is no other psychological testimony in evidence fails; the presence or absence of such data has no relevance to the viability of Dr. Diehl's evaluation. Woodward v. Sullivan, 983 F.2d 1059 (4th Cir. 1993).

If the administrative law judge "was in doubt as to the validity of [Plaintiff's psychological impairments], he should have sought clarification of the test results ... or ordered

---

not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

8

additional testing. Because of the Commissioner's duty to develop the medical record fully and fairly 'it is reversible error for an [administrative law judge] not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.'" Berryman v. Massanari, 170 F.Supp.2d 1180, 1185 (N.D.Ala. 2001)(quoting Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984)) (internal quotation marks omitted)); see also Andrade v. Secretary of Health and Human Servs., 985 F.2d 1045 (10th Cir. 1993)(administrative law judge abused his discretion by assessing residual functional capacity without assistance of a mental health professional). The administrative law judge's summary dismissal of Dr. Diehl's report was not supported by substantial evidence and the decision of the Commissioner should be reversed. See, e.g., Wilder v. Chater, 64 F.3d 335, 337 (7th Cir. 1995).

## CONCLUSION

Accordingly for the aforementioned reasons it is recommended that, pursuant to this Court's power to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be reversed and this cause remanded to the Commissioner for further proceedings including, but not limited to, reconsideration of Plaintiff's mental impairments as a "severe impairment" and what, if any, functional limitations result from such impairments. The

administrative law judge should consider also whether Plaintiff's depression exacerbates her pain and/or supports Plaintiff's testimony regarding her pain and shall continue the sequential evaluation process, if necessary.

                                   Respectfully Submitted,

                                   Robert S. Carr
                                   United States Magistrate Judge

Charleston, South Carolina,

October **31**, 2008